IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | | |
|---|---|---|
| WILLIAM ROBERT BRADSHAW, | § | |
| and RANDALL LEE GERIK, | § | |
| on behalf of themselves and the | § | |
| class of similarly situated persons, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. W-08-CV-246 |
| | § | |
| | § | |
| McLENNAN COUNTY; et al., | § | |
|     Defendants, | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Sheriff Lynch's Motion to Dismiss, and Defendant McLennan County's Motion to Dismiss. The arguments contained in each Motion are similar enough that a single order may adequately address both. Having reviewed the Motions, Response, Replies, and applicable legal authority, the Court is of the opinion that the motions are meritorious in part and should be granted in part and denied in part.

## I. FACTS

On or about June 1, 2007, Plaintiff William Robert Bradshaw was arrested for driving under the influence of alcohol. The arresting officer took Plaintiff to the McLennan County jail where Plaintiff was subjected to a visual body cavity search, which is better known as a strip search. This strip search was allegedly performed

prior to any appearance before a judge and without individualized reasonable suspicion that Plaintiff was concealing weapons or contraband.

On or about May 3, 2008, Plaintiff Randall Lee Gerik was arrested for driving under the influence of alcohol.  Like Bradshaw, Gerik was arrested and taken to the McLennan County Jail where he was strip searched.  Gerik alleges that said strip search was conducted without a reasonable suspicion that he was concealing contraband or weapons.

Plaintiffs allege that the Sheriff's Deputies who conducted the strip search did so pursuant to established policies of the McLennan County Sheriff's Office.[1] Plaintiffs further allege that the McLennan County Sheriff's Deputies routinely follow the policy of strip searching pre-arraignment detainees without having an individualized reasonable suspicion that such a search would be productive of weapons or contraband.

Plaintiffs now seek monetary damages and prospective relief.  Specifically, Plaintiffs claim damages for "distress, anguish, suffering, humiliation, deprivation of constitutional rights, and other incidental, consequential, and special damages" all arising from the strip search that each defendant endured.  Pls.' Complaint 16. Plaintiffs also allege that the defendants acted in a "malicious, reckless, wanton,

---

[1]Because class certification issues have not been addressed, this Order examines only the two named plaintiffs and not the class they seek to represent. The term "Plaintiffs" refers only to William Robert Bradshaw and Randall Lee Gerik.

oppressive, and/or fraudulent" way that justifies an award of punitive damages. Pls.' Complaint 16.  Plaintiffs additionally ask the Court to enjoin Defendants from strip searching persons arrested for non-violent, non-drug related crimes.

Plaintiffs have sued McLennan County, the McLennan County Sheriff's Office, McLennan County Sheriff Larry Lynch, individually and in his official capacity, McLennan County Sheriff Deputies, sued under their fictitious names Does 1 through 50 and Roes 1 through 20.  In the motions before the Court, Defendants McLennan County and Sheriff Larry Lynch in his individual capacity request that the Court dismiss Plaintiffs' claims against them.  McLennan County argues that two named defendants–the McLennan County Sheriff's Department and Sheriff Larry Lynch in his official capacity–should be dismissed because the Sheriff's Department is not an entity of jural existence and the official capacity action is redundant of the action against McLennan County itself.  Both McLennan County and Sheriff Lynch argue that Plaintiffs have failed to allege a constitutional violation.  Sheriff Lynch also claims that he is entitled to qualified immunity.  Finally, both McLennan County and Sheriff Lynch argue that Plaintiffs lack standing to seek prospective relief as the future harm to Plaintiffs is based on a hypothetical situation.

## II. DISCUSSION

In a Motion to Dismiss, the Court must take as true all well-pleaded, non-conclusory allegations in the Plaintiff's Complaint.  *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale*, 677 F.2d 1045, 1050 (5th Cir. 1982).  The Court may

dismiss a complaint for failure to state a claim only  if it appears beyond doubt from the face of Plaintiff's pleadings that he can prove no set of facts in support of his claims that would entitle him to relief.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### a. ACTIONS AGAINST THE McLENNAN COUNTY SHERIFF'S DEPARTMENT AND SHERIFF LYNCH IN HIS OFFICIAL CAPACITY

McLennan County first alleges that the McLennan County Sheriff's Department, which is a named defendant, is not an entity of jural existence, nor a "person" under § 1983.  McLennan County argues that the action against McLennan County Sheriff's Office should therefore be dismissed pursuant to Rule 12(b)(6). Plaintiffs acknowledge that the McLennan County Sheriff's Office is not a separate entity amenable to suit and do not object to the Sheriff's Office being dismissed. Accordingly, McLennan County's Motion to Dismiss should be granted in this respect, and Plaintiffs claims against the McLennan County Sheriff's Office should be dismissed.

McLennan County next alleges that the action against Sheriff Larry Lynch in his official capacity is redundant of the action against McLennan County itself and has no independent legal significance.  Plaintiffs state that they do not object to dismissing the official capacity action against Sheriff Lynch "provided the Court does not grant McLennan County's Motion to Dismiss."  Pl.'s Response 2.

Suing a person in his official capacity has the same effect as suing the entity

of which the officer is an agent. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). By naming as defendants McLennan County and Sheriff Lynch in his official capacity Plaintiffs name the same entity as defendant twice. Plaintiffs attempt to make their consent to the dismissal of Sheriff Lynch in his official capacity contingent on the denial of McLennan County's Motion to Dismiss. Regardless of whether Plaintiffs consent, the Court will dismiss the claims against Sheriff Lynch in his official capacity because they are redundant of the claims against McLennan County.

*b.* CONSTITUTIONAL VIOLATION

Both McLennan County and Sheriff Lynch claim that the facts Plaintiffs allege, even if true, do not amount to a constitutional violation. McLennan County and Sheriff Lynch argue that current case law permits strip searches of persons arrested for violations of law that are not "minor." Defendants interpret relevant case law as defining a minor offense as one for which jail time is not a possible punishment. Accordingly, Defendants argue, a strip search of a person arrested for DWI is acceptable as there is a minimum punishment of 72 hours confinement for such a person. Plaintiffs' complaint should be dismissed, Defendants argue, for failure to sufficiently allege a Constitutional violation. Plaintiffs respond by arguing that case law from several different Circuits establishes that Defendants' acts and omissions violated Plaintiffs' rights under the 4th Amendment of the Constitution.

The Supreme Court addressed the constitutionality of strip searches in *Bell v. Wolfish*, 441 U.S. 520 (1979). In *Wolfish*, pretrial detainees challenged the

constitutionality of strip searches and body cavity searches that were conducted after

contact visits with persons from outside the institution. *Id.* at 558. The Second

Circuit Court of Appeals affirmed the District Court's finding that the strip searches

were acceptable. *Id.* The Court of Appeals also affirmed the lower court's finding

that body cavity searches should be prohibited absent probable cause to believe that

the individual was concealing contraband. *Id.*

The Supreme Court acknowledged that body cavity searches are extremely

intrusive. *Id.* Even still, the Court stated, "we nonetheless conclude that these

searches do not violate [the Fourth] Amendment. The Fourth Amendment prohibits

only unreasonable searches, . . . and under the circumstances, we do not believe

that these searches are unreasonable." *Id.* The Court emphasized the importance

of according prison administrators "wide-ranging deference in the adoption and

execution of policies and practices that in their judgment are needed to preserve

internal order and discipline and to maintain institutional security." *Id.* at 547.

Since the Supreme Court's decision in *Wolfish*, circuit courts across the

country have distinguished cases from *Wolfish* and have whittled away at the "wide-

ranging deference" that the Supreme Court relied upon. *See, e.g. Mary Beth G. v.

City of Chicago*, 723 F.2d 1263 (7th Cir. 1983)*; Logan v. Shealy*, 660 F.2d 1007 (4th

Cir. 1981); *Weber v. Dell*, 804 F.2d 796 (2nd Cir. 1986). Most significant to the

immediate discussion is the Fifth Circuit's decision in *Stewart v. Lubbock County*,

767 F.2d 153 (5th Cir. 1985). In *Stewart*, the Fifth Circuit addressed the

constitutionality of a strip search policy that permitted strip searches of arrestees regardless of the crimes for which they were arrested. *Id.* One plaintiff in *Stewart* was arrested for public intoxication, the other on an outstanding warrant for issuing a bad check.[2] After being arrested and taken to the Lubbock County jail the plaintiffs were strip searched pursuant to the aforementioned policy. The plaintiffs claimed that such searches violated their Fourth Amendment rights.

In its analysis the Fifth Circuit looked to cases from the Seventh and Fourth Circuits for guidance. The first case the Fifth Circuit addressed was *Mary Beth G. v. City of Chicago*, 723 F.2d 1263 (7th Cir. 1983). In *Mary Beth G.* the Seventh Circuit distinguished *Wolfish* from the case then before the court and balanced the City of Chicago's need to search "minor offenders" in order to preserve jail security with the minor offenders' interest in their personal privacy. *Id.* at 156. The court there held that the city's interest in security was outweighed by the privacy interests. *Id.* The court found the strip searches unreasonable because the authorities had no reasonable suspicion that the detainees were concealing weapons or contraband. *Id.*

The *Stewart* court next cited to *Logan v. Shealy*, 660 F.2d 1007 (4th Cir. 1981). In that case, the Fourth Circuit applied and distinguished *Wolfish* to a strip search of a person arrested for driving while intoxicated. *Id.* at 1013. The Fourth

---

[2]The second plaintiff in the action sued on behalf of herself and all others similarly situated. For the purposes of this discussion, however, the Court will refer to the group as one individual.

Circuit pointed out that the offense of driving while intoxicated was "not a minor traffic offense." *Id.* Nevertheless, the Fourth Circuit said, it was an offense "not commonly associated by its very nature with the possession of weapons or contraband." *Id.* That court held that the strip search of the arrestee was unconstitutional. *Id.*

Ultimately, the Fifth Circuit found Lubbock County's strip search policy to be unconstitutional because it "was applied to minor offenders awaiting bond when no reasonable suspicion existed that they as a category of offenders or individually might possess weapons or contraband. . . ." *Id.* at 156-157. Although the holding in *Stewart* relied on the strip search policy's application to minor offenders–contrary to the *Logan* court's reasoning–this Court finds that Plaintiffs have alleged a constitutional violation.

The case law discussed above addresses two ends of a spectrum of offenses. On one end there are offenses that clearly fall into the "minor" category–offenses such as failing to register a dog, or public intoxication. At the other end of this spectrum are the offenses that Plaintiffs and Defendants accept to be "major"–drug offenses and violent crimes. Somewhere between those two ends lies the offense of driving under the influence of alcohol. The Court believes that the offense of driving under the influence of alcohol, unaccompanied by any other illegal activity, fits more appropriately with the minor offenses. Of course, a driving under the influence of alcohol arrest accompanied by, for instance, evading arrest or suspected intoxication on another drug would fall closer to the "major" offense end

of the spectrum than would DUI alone.  The Court, however, is not presented with

such a situation.  As with other offenses at the minor end of the spectrum, the Court

finds that an officer needs reasonable suspicion to strip search someone arrested

solely for driving under the influence of alcohol.

In the case now before the Court Plaintiffs allege that they were arrested for

driving under the influence of alcohol.  As stated, this offense, by itself, falls more

closely towards the "minor" end of the spectrum.  The Court finds, therefore, that the

strip search of a driving under the influence of alcohol arrestee without a reasonable

suspicion that the strip search will yield contraband or weapons is a constitutional

violation.  Accordingly, Plaintiffs have stated a claim for a constitutional violation.

Because Plaintiffs have done so, neither the action against McLennan County nor

the action against Sheriff Lynch in his individual capacity should be dismissed on this

ground.

### c. QUALIFIED IMMUNITY

Sheriff Lynch argues that he should be immune from suit in the case before

the Court.[3]  Sheriff Lynch claims that his interpretation of relevant case law, which

was discussed above, is reasonable and he was not provided with fair notice that his

actions were prohibited by the Constitution.  Plaintiffs counter by citing to a Northern

District of Texas case from 1987 in addition to the case law discussed *supra* to show

---

[3]Because the Court finds that Plaintiffs' claims against Sheriff Lynch in his
official capacity should be dismissed any further discussion of Sheriff Lynch
refers to Sheriff Lynch in his individual capacity.

that the illegality of the strip search was clearly established at the time of the actions in question.

To determine whether an officer is entitled to qualified immunity a court must determine whether the plaintiff has stated a claim for a violation of a constitutional right, whether that right was clearly established at the time of the actions underlying this suit, and whether the defendant's actions were objectively unreasonable in light of the legal rules clearly established at the time of the actions. *See e.g., Thomas v. City of Dallas*, 175 F.3d 358 (5th Cir. 1999). As discussed above, Plaintiffs have stated a claim for a constitutional violation. Accordingly, the Court must next determine whether the constitutional right allegedly violated by Sheriff Lynch was "clearly established" at the time of the alleged violation.

To be clearly established, a right must be defined well enough that "a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The Supreme Court has likened this requirement to the right to fair notice held by defendants charged with a criminal offense. *See id.* The *Hope* Court clarified that "even though 'the very action in question has [not] previously been held unlawful,'" ". . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question. . . ." *Id.* at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). It is important to note that the Court must determine whether the constitutional violation is clearly established *at the time of the alleged action*. *See*

*Hope*, 536 U.S. at 741.

As discussed earlier, the Fifth Circuit has addressed the lawfulness of strip searches in the context of "minor" offenses but not in DWI cases.  The Fifth Circuit has not, however, addressed strip searches in the context of "major" offenses that are not the type normally associated with concealing weapons or contraband.  The Fifth Circuit's brief mention of the *Logan* case, discussed *supra,* provides little guidance.  In fact, the Fifth Circuit recognized that the *Logan* court looked past the fact that DWI is not a "minor" offense and then immediately reached a decision based on the minor/major offense distinction.  It is not objectively unreasonable for an official to interpret the Fifth Circuit's ruling, which relied on the minor/major distinction, as rejecting the Fourth Circuit's method that requires looking at whether or not the offense is one that is not commonly associated with the concealing of weapons or contraband.

Plaintiffs allege that the case of *Holton v. Mohan*, 684 F.Supp. 1407 (N.D. Tex. 1987), demonstrates that the illegality of strip searches such as the one before the Court was clearly established at the time of Plaintiffs' arrests.  Aside from its lack of precedential value, the *Holton* case was decided without the benefit of the following twenty years of case law in which the Fifth Circuit strengthened its reliance on the minor/major offense distinction.  *See, e.g. Watt v. City of Richardson*, 849 F.2d 195 (5th Cir 1988); *Kelly v. Foti*, 77 F.3d 819 (5th Cir. 1996).  Plaintiffs further claim that "it has been clearly established for some time that a search is 'unreasonable' if it

violates the searched person's constitutional rights." Pl.'s Response 5 (citing *Holton*, 684 F.Supp. 1407(N.D. Tex 1987)).  This tautological statement provides no further support for Plaintiffs' position in light of the Supreme Court's statements in *Anderson*.  *Anderson*, 483 U.S. at 639 (stating that qualified immunity would be turned into unqualified liability if courts allowed plaintiffs to allege violations of extremely abstract rights to defeat qualified immunity).

Regardless of the state of law at the time of the *Holton* decision, at the time of the actions alleged in the case now before the Court the propriety of strip searches of a person arrested for DWI was not so clearly established as to provide fair warning to Sheriff Lynch that his actions amounted to a violation of the Fourth Amendment.    Furthermore, Sheriff Lynch's actions were not objectively unreasonable in light of the legal rules clearly established at the time of the alleged action.  Accordingly, Sheriff Lynch is entitled to qualified immunity.

## *d.* STANDING

Defendants McLennan County and Sheriff Lynch argue that Plaintiffs lack standing to pursue injunctive or declaratory relief.  Plaintiffs' request for injunctive relief is based on mere conjecture and hypothetical future injury, Defendants claim. Defendants cite to *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) for support. Plaintiffs argue that their situation differs from that of the plaintiff in the *Lyons* case cited by Defendants.  They claim that a Fifth Circuit case, *Hernandez v. Cremer*, 913 F.2d 230 (5th Cir. 1990), supports standing because the complained of activity here

is "capable of repetition, yet evading review."  Pls.' Response 9.

To pursue a claim for injunctive relief in federal court, a "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101-102 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109-110 (1969).  This requirement, which is imposed by Article III of the Constitution, is designed to ensure true adverseness between the parties.  *Id.* at 101.  This true adverseness "'sharpens the presentation of issues' necessary for the proper resolution of constitutional questions."  *Id.* (citing Baker v. Carr, 369 U.S. 186, 204 (1962)).

In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court addressed whether an injured party could seek injunctive relief.  The injury in *Lyons* arose from police officers' use of a choke-hold on the plaintiff.  *Id.* at 97-98. The Court there held that the plaintiff had not established a real and immediate threat of future injury.  *Id.* at 108.  In order to be subjected to the injury to be enjoined Lyons would have to "again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."  *Id.* at 105.

Although Plaintiffs cite to *Hernandez v. Cremer*, 913 F.2d 230 (5th Cir. 1990), to support the conclusion that they have standing, the *Hernandez* case actually supports the opposite result.  *See id.* at 235.  The plaintiff in *Hernandez* sought to

enjoin harassment that accompanied his pursuit of a *legal* activity–crossing the border between the United States and Mexico by a United States Citizen. *Id.* The Fifth Circuit made clear that "courts have been unwilling to assume that the party seeking relief will repeat the type of *misconduct* that would once again place him or her at risk of that injury." *Id.* In *Hernandez*, the Fifth Circuit distinguished *Lyons* and held that the plaintiff had standing to seek an injunction of the defendants' actions because, unlike *Lyons*, the action he sought to repeat was a legal activity. *Id.*

In order to suffer future injury, Plaintiffs Bradshaw and Gerik would have to drink enough alcohol to exceed the legal limit, enter a vehicle and drive while intoxicated, be pulled over by an officer, placed under arrest, taken to the McLennan County jail, and strip searched pursuant to the County's policy. The potential for injury in this case is based entirely on a hypothetical future scenario where Plaintiffs again exercise poor judgment and drive while intoxicated. If drunk driving were a legal activity, Plaintiffs might have standing to pursue injunctive relief. *See Hernandez*, 913 F.2d at 235. This Court, however, will follow the holdings of the United States Supreme Court and the Fifth Circuit Court of Appeals and hold that Plaintiffs do not have standing to pursue their claims for injunctive and declaratory relief. *See Lyons*, 461 U.S. at 1667.

Plaintiffs next argue that they have standing to enjoin the County from strip searches because the alleged constitutional violation is "capable of repetition, yet evading review." Pls.' Response 9. Aside from the fact that Plaintiffs' argument

14

could not remedy the absence of a future injury, it lacks merit.  Even if the Court

were to entertain Plaintiffs' argument, Plaintiffs' claim that they were illegally strip

searched remains to be litigated in this suit.  In no sense does that claim "evade"

review.  *See Lyons*, 461 U.S. at 109.  "Furthermore, the capable-of-repetition

doctrine applies only in exceptional situations, and generally only where the named

plaintiff can make a reasonable showing that he will again be subjected to the

alleged illegality."  *Id.* (citing *DeFunis v. Odegaard*, 416 U.S. 312, 319 (1974)). As

discussed above, Plaintiffs have failed to make such a showing.  The "capable of

repetition, yet evading review" argument proffered by Plaintiffs lacks merit and does

not convey standing to Plaintiffs.

## III. CONCLUSION

Because the McLennan County Sheriff's Department is not an entity subject

to suit Plaintiffs' claims against it should be dismissed.  Because Plaintiffs' claims

against Sheriff Larry Lynch in his official capacity are redundant of the claims against

McLennan County, they too should be dismissed.  Taking as true all of Plaintiffs'

allegations, the Court finds that Plaintiffs have alleged a constitutional violation.

Accordingly, McLennan County's Motion to Dismiss should be denied to the extent

it requests dismissal of Plaintiffs' claims against McLennan County for failure to state

a claim for a constitutional violation.

Even though Plaintiffs have alleged facts that establish a constitutional

violation, the right allegedly violated by Sheriff Lynch was not "clearly established"

15

at the time of the alleged violation and his actions were not objectively unreasonable. Sheriff Lynch, therefore, is entitled to qualified immunity and Plaintiffs' claims against Sheriff Lynch should be dismissed.

Finally, Plaintiffs lack standing to pursue injunctive relief.  Any threat of future harm to the Plaintiffs is based on a hypothetical situation where Plaintiffs again violate the law.  Furthermore, Plaintiffs' claims do not "evade review" in any sense of the word.  Plaintiffs do not, therefore, meet the requirements of Article III of the United States Constitution.  Accordingly, it is

**ORDERED** that McLennan County's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that Plaintiffs' claims against "the McLennan County Sheriff's Department" and against "Sheriff Larry Lynch in his Official Capacity" are **DISMISSED**.  It is further

**ORDERED** that McLennan County's Motion to Dismiss for failure to allege a constitutional violation is **DENIED**.  It is further

**ORDERED** that Sheriff Larry Lynch's Motion to Dismiss for failure to allege a constitutional violation is **DENIED**.  It is further

**ORDERED** that Sheriff Lynch's claim for qualified immunity is **GRANTED** and Plaintiffs' claims against Sheriff Lynch are **DISMISSED**.  It is further

**ORDERED** that Plaintiffs' claims for injunctive relief are **DISMISSED** for lack of standing.

**SIGNED** on this 19th day of May, 2009.

_____

WALTER S. SMITH, JR.
CHIEF UNITED STATES DISTRICT JUDGE